May it please the court, AUSA Donovan Kokus on behalf of the United States. Before I get into the merits, I wanted to alert the court to something I discovered just for the first time this morning that I think affects at least the color of this whole dispute. I was looking at the order, the April 9th order, and the copy in my appendix, in appendix nine says at the very top it was docketed in the district court on 4-9-19 at document 50. Well, when I went to look at my copy of the actual docket, there is no April 9th order, but there is a document 50, but that's the judgment. So I pulled up the document online to try to see what happened to this order, and I on the docket, it was initially entered as a text order entry, so you wouldn't be able to click through that number to see anything. Well, now for the first time, I noticed there's a, you can click through and see something. So when I did that, lo and behold, what pops up is a copy of the order that was only disseminated on April 9th, and at the very top of it, you can tell whoever scanned it in kind of clumsily essentially superimposed the March 22nd date over the April 9th date. In other words, somebody went back and scanned the April 9th order in as though it had been on file and served on the parties on March 22nd. So I looked at the, looking at the docket again, you can see there are two sets of initials, which is very unusual. And while it's not unusual to edit filings or edit docket entries, what's supposed to happen when that happens is there should be something that says modified text on whatever date. And so you can see that this SDP, which is the initials on 46, they've done that in other entries at dockets 49 and 55, but not on this one. So I had my appellate chief contact the operations manager at the clerk's office, and they confirmed what I've known from clerking here, which is that SDP is the employee at the clerk's office. And whoever that is would have entered, would have backdated this and entered it at the behest of someone in the district court. And that someone appears to be MWM, which is the law clerk, Mark Mone. So based on that, I mean, I can't, I can't ask you guys to remand this to another panel for resentencing because I only discovered this by miss marbling around this morning. But I, and I, so I don't have permission to ask that from you, but I would urge you to look at the docket entries that I, that I've cited to you and look at what you pull up when you pull up the new, when you go online right now and look at that April 9th order, you'll see what I'm describing. It sure does look like someone from the chambers has instructed the clerk's office to enter that order sort of non-pro-tunk and backdate it. So it looks like we had access to it when we didn't. But what difference would it make? The difference it makes your honor is there, there's the dispute about what we knew and when we knew it and whether our objection to the court's ruling that alluded to it sentencing only was preserved. And there seems to be some factual dispute as to what happened, what our AUSA was told. But what's definitely not in dispute is somebody has gone back on the docket and sure tried to make it look like it appears that we actually had a copy of this order on file on March 22nd and it just didn't happen. So the April 9th order, is that the judgment of sentence? I'm sorry? The April 9th order, I did not pull that up from the appendix. Describe that for me. Is that the judgment of sentence? The April 9th order? That's the, no, that's the order of the court explaining why the court was invoking judicial estoppel. I gotcha. Okay. Right? That's why it matters. And that's quoted in your brief. Yes. So everything I've, so the order that I put in my brief and thank heavens I did it immediately or there'd be no evidence of it, is at appendix 9 and it's at the top, document 50, file 4-9-19. But then when you pull up that, you try to find that same order, you won't find it there now. Somebody's gone back and essentially put that over the top of the original text entry, which told us nothing other than the objections being sustained. So this makes it look like- Can you put this in the form of a 28-J letter and send it to, send it to the court? I'd like to get that and then see where that goes. Absolutely. Okay. Absolutely, Your Honor. I will do that. I don't want to hear about your own appeal, but I hope you will save some time to tell us your view on the ripeness issue of this, of this cross appeal. I don't know if you agree with your, with Ms. Pietropoulos, that the cross appeal is ripe. Yes, Your Honor. So let me just say, I put that in my brief first, not because I thought it was strongest, but because I thought it would be the first thing you would address just logically. And frankly, I don't, I don't know how strong I think that is. I know the chief judge of our district raised the ripeness issue sua sponte one time, just sort of in passing. So I thought it was worth going down that road. But you know, I'll stand on my briefs on the ripeness issue. I'm sorry I don't have more. I did try to pack in everything I could. If you can help us, what are the contingencies here that might obviate, might mean that this issue would never arise? Because I think there are some things I'd like to walk through them to understand at what future points you could litigate, whether that would be by habeas or 1983 action, because there are some steps between here and there. Right. And so the contingencies I listed in my brief were such as, you know, first he has to fail drug tests and then he has to fail enough drug tests that probation says, OK, you failed enough time for you to go into drug treatment as the court ordered. And then the defendant would have to say, I can't afford to pay. And probation would have to turn around and say to him, no, you have to. And probation would have to say, I'm going to revoke you if you don't. And then I guess revocation proceedings would have to begin. It's not the way it works in the Western District, it wouldn't be the probation officer recommending probation, recommending violation to the court, and then the court would make an inquiry into this ability to pay. You're right. You're right. I omitted that last critical step. Probation couldn't revoke him on its own. It would just recommend that to the court. Well, I can tell you as part of the revocation proceedings. Yes, I think I heard your question. I think that's yes. Yeah, I think we did hear it. But in any case, it's subject to his ability to pay. It really doesn't sound like he's a person of means. So my suspicion is going forward, he just wouldn't be able to afford the expense of treatment. So it's all conditioned, I assume, on his ability to pay. And that's a decision made by the court? Or by the probation? Well, probation, probation, Your Honor, would do the fact finding on that, as it does for issues like this. You know, they're the ones who can determine. But ultimately, it would have to be recommended to the court. I can tell Your Honor that probation has never, ever revoked anyone for a violation of this condition. It's been used here for a better part of a decade. And it's never, ever charged a defendant a dime under this condition. All they use it for is to enable the defendant to use his own private insurance if he wants to. And the logic is, his private insurance often will be better than the contracted for insurance. And more than that, there is no enforcement mechanism, even if probation wanted to violate them. Because there isn't something like, you know, in the guidelines, I think 5C1.1 enables the court to order a condition that says something to the effect of, you, defendant, shall offer your financial information to probation, give it to probation on request. That condition was not imposed here. And my thinking is, it's because if you read that guideline, that only applies in issues where you have enforcement of forfeitures or fines or restitution. 5B1.3 is what it is. So he's not, you know, summarily terminated, but rather he's given some some form of due process or some hearing to determine his financial ability to pay for treatment or not. Better than that, Your Honor, because what the whole reason I'm mentioning the unenforceability is probation has to take his word for it. If he says, you know, I can't afford this, then there's no way to prove he can, no way to revoke him on it. So that's why I mean, to me, this the whole delegation issue is coming up on plain error. It's not preserved. And I don't see how he can show prejudice. More than that, suppose, for example, you can envision a way this could be revoked. Well, under the guidelines, I think it's 7B1.1, the guidelines say that you always proceed with the most serious revocation, the serious grade violation, and that controls if there is a violation. Well, here, the way the order is structured, he necessarily has to fail drug tests first. That would be a grade A violation, a violation of refusing to pay what you can for your drug treatment would be grade C at worst. So that would be swallowed up by an A, even if we go down this road and assume revocation could happen, which it doesn't. So this condition just exists to the benefit of the defendant. And it's one of those rare times, I think, and, you know, sentencing rehabilitation is kind of gone by the wayside, but it's coming back now. And it's one of those times in sentencing where common sense and rehabilitation and what's good for the defendant actually all seem to coincide in some kind of harmonic convergence here. And so I think we ought to just be kind to that when we can and not mess with it. You know, but so that that I don't know if your honors wanted more on the merits of my our appeal, the government appeal here. Please do, I don't want to sidetrack you too much from that. Yes. So the I think the dispute is Mr. Gardner doesn't dispute that the court erred if it's to respond, they invoke judicial estoppel to bypass our arguments about the guideline calculation. He just denies that it actually did rely on judicial estoppel. But that's what the April 9th order explicitly invokes in the last sentence. No one raised it. And that's a finding of judicial estoppel is not a ruling on the merits of the underlying guideline dispute. It's a ruling on the merits of judicial estoppel. So when you read that first paragraph of the April 9th order, that's the court explaining why it invoked judicial estoppel. So it said we agreed the 2014 and 15 offenses were related before. So we're stopped from arguing they're unrelated to anything now. That's an error as a matter of law to avoid breaching our guidelines arguments on the merits. We were never arguing those two offenses, one related to each other. We conceded they had them. We argued that neither related to the instant offense, which is the 2017 firearms offense. And the guidelines make the instant offense the look back point for all relevant conduct. So there's, you know, just looking at the merits now of the judicial estoppel, there was even if you found an inconsistency in our arguments, those are reconcilable and not irreconcilable. There was no bad faith by us, no affront to the court's authority or integrity. So and those are Montrose factors the court didn't even discuss before finding our committed misconduct, essentially. So that's why we think remand is needed to rule on the merits. The only way you can read it as a ruling on the merits is to ignore the phrase judicial estoppel and insert for a one point to a two, which Gardner asked you to do. And I'll admit to you, if you did both of those things, then you could be the order is treating the two priors as a single sentence under for a one point to a two. But you can't because the court didn't mention the guidelines and it didn't mention any of the three conditions of it. So there is an intervening arrest because the 2015 federal conspiracy continued after his arrest for the 2014 state hearing. Even if there hadn't been an intervening arrest, he'd still have to show that the two priors were either contained in the same charging instrument or sentenced on different days. And he can't show that. So the only way you could possibly conceptually get to where the court did, and this may be where it thought it was going, was to say, well, the two priors were relevant to each other in an earlier sentencing. Therefore, one of them doesn't get a point. There's nothing in the guidelines, certainly not for a one point to a two. That makes that an exception. So even on the merits, I mean, I addressed it on the merits, too, in case Mr. Gardner said, well, you could affirm on any basis. There is no basis to affirm. You agree the court could, in its assessment of Mr. Gardner under 3553A, the court could have come to exactly the same sentence, the same conclusion, and then read those priors as you just have suggested. Just saying, well, under equitable principles here, he kind of got hit for that before. I'm not going to hit him for it again. Precisely, Your Honor. It could have. But there's nothing in this record that where the court said, and I would have anyway under 3553A, so we don't know what. But you're right. If on remand it were to decide, assuming this goes back to this district judge, if it were to decide that it wanted to do this under step three of Gunter under 3553A, even perhaps step two on a departure, I guess, on the logic that his PSR overstated his criminal history. You know, may the road rise up to meet it if it wants to do that. I'm not saying we wouldn't I'm not saying we wouldn't oppose that. But that's certainly that's kind of what I was interpreting from your remark. But that. Yeah. Because I very carefully phrased my question to you before in terms of just in terms of equity, the court could do that. Yeah. OK, OK. Yeah, it could. That would be the proper procedure for getting the result the court wanted to do here. But it would be a procedure allowed by Gunter in the guidelines and not a pure bypassing of the procedure that it did by invoking judicial estoppel. So, your Honor, is having the issue with the trial is a USA's objection at sentencing when the court alluded to the order? Because I know, Mr. I'm sorry. I have no no. OK. All right. So I'll pass over that then, as far as I think that's really all I have on our issue, other than to say, you know, referring to a ruling at sentencing might suffice if the court's reasons for it were evident somewhere else in the record already. But they weren't. There was no tentative findings that that listed this. So alluding to a clerk's verbal announcement before sentencing off the record, outside the presence of the judge on an issue, the court raised to a spot that isn't ruling at sentencing under Rule 32 of the federal rules of criminal procedure. This court in Metro seems to interpret at sentencing as meaning the judge must announce his ruling on the record. That's U.S. Metro's Third Circuit, 2018, alluding to Mr. Mr. Gorgas, just for your own convenience and knowledge, that noise that we kind of heard, we couldn't figure out a few minutes ago. That was Mr. Kane telling us he had five minutes left in your argument. The clock did not start to run while you were going through the concern. You've really generally and appropriately raised about changes in the documents. OK, we're not on the clock. OK, thank you. So then just to circle back to Mr. Gardner's issue with the cost of treatment condition, I mean, every circuit to have considered the issue approves it on the basis that it's a cost under 3672. None have struck it down as a fine. I understand there's not a lot of authority on this, but what exists is pretty clear on that point. And this condition isn't a punishment and it doesn't allow probation to decide the extent or nature of one. And if you agree with that, then you just have the delegation issue. And, you know, as we kind of went through, there's certainly no error because this is what 3672 allows the court to do. And the court ordered him to contribute an amount he can afford. That's consistent with the statute. And I know Mr. Gardner says, well, that says courts, not probation. But, you know, the courts delegate duties all the time to probation and they can under 18 USC 3603. That's the one that says probation can perform any other duties a court may designate. And so there's no plain error for sure, because you think about all the other much more probation can order a court can order probation to make sure a defendant is supporting his dependents. There's nothing in that guideline about in an amount that's reasonable or what up to what he can afford. And those were two sort of backstops to the court's order of this cost provision. Let's see. I'm trying to think if there's anything else. I don't think I have anything else, Your Honor, at least on on this. OK, two minutes. I could do it. You just got a two minute signal there. Any other questions? There's been a suggestion for days. No, no. Could you could you briefly reiterate your position with regard to those two arrested to 2014 and 2015 arresting whether they should be treated as separate offenses or not? Yes, Your Honor. So our position is that while they were related for the purposes of the 2015 proceeding, they should nevertheless be treated as separate offenses because they don't fall under any of the exceptions in for a one point for a one point one three eight three, I think, whatever the statute is that that he's saying the court relied on it. They don't fall under any of the exceptions because there was an intervening arrest. Mr. Gardner was arrested for, I think, two bricks of heroin, and that led to the state heroin offense. And then when he was out on parole, he's picked up again for four bricks of heroin on the federal heroin offense. And those four bricks have the garden hire distinctive logo on them. So that places him in the conspiracy. So and there isn't you know, those two offenses were not sentenced on different on the same day. And the first offense, the possession offense wasn't contained within the conspiracy offense because you have different elements of both. And really, it's completely different actions at this point. Of course, of course, if they were if we if we remand the judge can in that case sentence on the same day, both both and come essentially to the same conclusion. No, no, you're right. So I'm talking about the two priors. And so that's that ship has sailed on the prior. Yeah. 2014 and 2015 arrest. Right, right. Those so those were sentenced on different days. And then, you know, all that would really matter is, I mean, maybe he could say those two. I mean, the only legitimate way under the guidelines would be to say that one or the other or both of these offenses was somehow related conduct to the gun offense. But we just don't have any evidence of that. So so that that is our position. And, you know, I can't say what we'd say on variance or departure. But, you know, in fairness to Mr. Gardner to the court, you know, just as the court ignored our arguments on the merits, it ignored his. I think he should have the chance just as well as we do to make his case again that he deserves a variance or if he wants to try to say this overstated his criminal history, not saying we'd concede or what we would do. But, you know, the court needs to reach the merits of that dispute and not bypass it with the judicial estoppel. OK. Yeah, I was telling Mr. Cook is maybe I should adjust this to your colleague. But it does seem even though looking purely at his background and rap sheet, he you get a picture of a person who's really gone off the rails. But it does look like there was so much evidence presented at the sentencing that the judge accepted Mr. Gardner's explanation of, you know, yeah, it was off the rails. But I'm back on track now. I've turned my life around. The judge seemed to express quite a bit of sympathy for Gardner. And maybe that's why he viewed the prior arrest as a prior conviction is something he wasn't going to hammer him with and squeeze that into a judicial estoppel. I understand your argument. That was error. Right, right. Well, go ahead. Oh, I'm sorry. Yeah. You know, I don't have any dispute about that. It's just the court has to honor the Gunter step. So his sympathy for that argument can't excuse a miscalculation at step one, which is what we're saying happened here. Now, you know, again, variance at step three, maybe departure to those are legitimate ways to go about it, but not by sua sponte telling our trial USA that he committed misconduct for raising a position that's not even inconsistent once you unpack it. So that's that's sort of where we are in this. Did he really come down to the misconduct? I mean, you're I guess it's implied in judicial estoppel itself by the nature of what it is. But I didn't get the feeling that the judge was going off at the USA who was there for being unethical. Oh, he didn't at all, your honor. I mean, he just alluded to the ruling for which we had no written basis until April 9th. But you're right. It is an element of judicial estoppel that the government committed with the acted in bad faith and bad faith is by definition prosecutorial misconduct. Right. OK, that's that's why we're sensitive about it. Gotcha. OK, thank you. Miss Tibbetts. I mumbled that one. So I mispronounced it. You wouldn't hear it. On behalf of Mr. Gardner, your honor. I think I'll start with maybe where the parties agree in this matter. We, of course, disagree about the government's reading of what happened in this case. What part of it? The judicial estoppel part? Because it's pretty clear that's what the judge was. So it's our position that the judge's fleeting reference to judicial estoppel, even if it's appropriate, can't be reversible error, let alone plain error, unless it resulted in some government. So the government's position about the harm is it's saying because the court ruled that the government was judicially because the court ruled the government was judicially estopped from arguing the P.W.I.D. is not relevant conduct to the instant offensive conviction of the 922 G. The court necessarily must have found that the P.W.I.D. was, in fact, part of the 922 Now you're making a very technical argument. I'm not sure we have to get that deep into the weed series. So I understand what Mr. Kokas is saying in terms of the prejudice and plain error. It may not be prejudiced in terms of the sentence that resulted from this process because, as Mr. Kokas graciously conceded, you could get to the same sentence without specifically figuring in that prior arrest the way the court did. But the mention of judicial estoppel suggests to the AUSA who was there that day that he or she, I think it was a he, was guilty of acting in bad faith. Ten years from now, 20 years from now, or 12 years from now, if that AUSA ever applies for a position of public trust, ever tries to get either a state judgeship or a federal judgeship, the lawyer is going to be hit with a questionnaire which asks, have you ever been found guilty of or accused of acting unethically? Technically, to answer that question truthfully, the way this record is now, the attorney is going to have to say, well, yeah, you know, kind of. I did. Back there a few years ago, the judge did say that I acted in bad faith. I can't not be at all. I certainly understand why the government would be really concerned about having that legal conclusion on the record where it seems to me if we clean this up, send it back, the judge can do whatever he or she, whoever gets this case, wants to do. It could impose the same sentence. David Gardner on that day comes across as being even more worthy of a break because I don't know what he's been doing with his time in prison. And if he's the kind of person that the judge thought he was in sentencing, he probably can make a pretty persuasive argument at the time of sentencing that he should even get less than he actually got. The judge can factor all that in. Not him with a career, but give him a variance. He gets sentenced to a sentence that he may well be very pleased with. You may well be very pleased with. And the government does not have a finding of judicial estoppel, the AUSA who was in the court at the time didn't have to worry about that coming back to haunt him or her. What's wrong with that? I actually disagree that there's a finding of judicial estoppel that equates to a determination that this. Let's say I'm wrong about it's not a finding. If you ask that question on a questionnaire 10 years from now, you've got to at least bring to the attention of the reviewing authority that at some point in time, a court at least suggested that you had acted in bad faith. I can't pretend to understand what rules that the AUSAs are bound by your honor, but this fleeting reference, one sentence, two words in this order can't possibly be debated determination that Mr. Haller did anything wrong. It's a throwaway to my way of thinking. It was totally immaterial to the court's legal ruling, but let's take the government where it is, which is its position that that was the finding that there was this finding of judicial estoppel. The question then is because the government was on notice and did not object, this must be reviewed for plain air. And there are two reasons why the government can't satisfy plain air in this case. The first is it never even attempts to meet that burden. And the second is that at minimum at the fourth prong, the government can't satisfy its burden. This court, I've been looking through cases, there's no third circuit opinion that says that the court of appeal should exercise its discretion to correct a government forfeited error, finding that it seriously affects the fairness, integrity, or public reputation of the judicial proceedings. When the error, if there was an error, favored the defendant, and that the result would be a harsher sentence on the defendant. And I can point you to two first circuit cases that were very recent that say exactly that. It's Speed 879 F3rd 440, 2018, and Gorsuch 404 F3rd 543. That's a 2005 first circuit opinion. In both cases, it's the government appeal of a forfeited error. In fact, in one of them, the error forfeited was the court forgot or neglected to impose a 924C sentence, a mandatory consecutive 924C sentence. So that's legal error. And the court said, recognizing forfeited error would not be necessary to ensure the integrity and fairness of the proceedings. The reason that a defendant is entitled to a presumption on the fourth prong of plain error is that everyone recognizes a single extra day in jail has constitutional significance. And so when you get to Supreme Court cases like Rosales-Morales, it says, what reasonable citizen wouldn't bear a rightly diminished view of the judicial process and integrity if the court refused to correct an obvious error that threatens to require an individual to linger longer in federal prison than the law requires? That is not what we have here. That's why the government- Wait a second. Rosales-Morales says re-sentencing is not such a big deal. Why not send it back for re-sentencing? Judge McKee has raised some concerns, bubbling to be invoking judicial estoppel in a way that you can't really defend. So why not just, isn't the better practice just to send it back for re-sentencing and clean it up? Well, it's our position that we're still talking about plain error and the fourth prong. We have discretion. There are no rules at prong four. The court's been clear about that. Why shouldn't we exercise our discretion to clean this up? Right. So I would say there's countervailing reasons not to exercise your discretion and send it back for re-sentencing. And I think the court here seems to agree. There are reasons the court could have relied on to impose exactly the same sentence. Number one, the single sentence rule, which the government never challenges. And number two, there's every reason to read the court's March 22nd order as the court, if nothing else, accepting defense counsel's variance argument. So defense counsel is essentially saying, and her variance argument, hey, judge, even if you don't accept our single sentence rule, you can look at the reasons behind- Ms. McFarland, it's an interesting reversal. What usually happens, you're up here for the defense and the government is busy saying, well, the district court kind of got it wrong in sentencing, but they could have gotten to this other result anyway. And under discretionary sentencing, the district court usually could have gotten. And your office's standard response, which has some forces, well, but then ask the district court to dot its I's and cross its T's and get it right. We had a case the other day in which there's an argument, did the district court misunderstand some facts? And there was an argument that maybe the district court should have applied some other enhancements instead to get to the same result, but it's not our job to guess what the district court would have done. We'd have to have a great degree of confidence before we would foreclose that or treat it as there's no prejudice if we're not sure the right course to send it back, at least Rosales-Morales suggests that. And again, Rosales-Morales applies that send it back presumption because it's the defendant who's saying a higher guideline is... Okay. You want an asymmetric rule that says if a defendant, because the defendant has a liberty interest, you think we should ordinarily fix errors that harm a defendant. But I'm asking, doesn't it also affect the public's view if something looks like someone got an unjustifiably low sentence in both situations, why not apply a symmetrical rule? I understand what you're saying. And I'm not asking for an asymmetrical rule. I'm saying it applies differently when the government's the one that forfeited the error and the error isn't something like an illegal sentence. We're talking about a guideline calculation. And in fact, we disagree that there was error at all. The court in its order says, I am granting the defendant's objection. The government at pages two, six, and eight of its third step brief accepts that the defendant's objection was actually based on 4A1.2A2, the single sentence rule. So far, we are at understanding that that was the court's ruling, that he's granting that single sentence rule objection. When the judge is talking about what happened in 2015, he's actually saying, I can look at what Judge Fisher did in 2015. Her determination that the PWID paragraph 26 and the conspiracy of furthering were a single sentence as evidence, or I shouldn't say single sentence, excuse me, but they were part of one sentence as evidence to support my determination today that they are a single sentence under the single step rule. And the best evidence of that is under the guidelines application note 3B to 1B1.3, the relevant conduct rules. Judge Fisher back in 2015 determined that these two offenses were relevant conduct would have had to conclude, and that was based on the government's argument, that these two separate offenses that should be treated separately. So that's why her ruling in 2015 speaks to what Judge Sircone did today. That's why it makes sense as a shorthand, really. You don't want us to read this as judicial estoppel. If we disagree with you and think judicial estoppel looks like the ground, is there any basis for defending what the district court relied on judicial estoppel? Well, I guess I would say my best evidence of defending it is this. In the government's appellate brief, it says it could have argued back in 2015 that these two offenses were separated by an intervening arrest and on that basis opposed the court's relevant conduct determination. That's a first step brief footnote 7. And in the district court for this instant proceeding, the 2019 sentencing, that's the position it takes on intervening arrest. So the judge might have intuited that this changing of positions on intervening arrest just wasn't fair. And there's no change in facts. And there's no change in law. There's no third circuit published opinion that says this is an intervening arrest. When is it, when do you think the government should have objected to the judicial estoppel finding? You know, your friend on the other side has pointed out there's something going on here with an order being backdated from April 9th to March 22nd. When is it that the government had proper notice such that it couldn't lodge the timely objections that you could say they forfeited by not doing? Right. So I have a couple of answers to that, Your Honor. First of all, I mean, I can talk about this quote unquote backdating thing in a minute, but more importantly, 10 minutes before the court proceeding started, there's a text order docketed on ECF. And it says, we're sustaining the defendant's objections. Here's the guidelines. It's just missing those extra three sentences that are in the written order. Parties go on the record, and the court specifically asked that appendix page 54, with the court ruling this morning, which I understand counsel has reviewed. That's the moment that government counsel, if he had a problem with anything, should have said, no, Your Honor, we didn't review it. Instead, he says, I want to state our objections. And the objection is to 4A1.82, the single sentence rule. And he says, I can leave it at that. I understand the courts made that ruling. So you think judicial estoppel had been provided to the government by then? Notice of that had been? We'll ask your friend on rebuttal whether that's his understanding of the facts, because that's not the way it was portrayed in the briefs or the record that I saw. The government, I mean, I know this is an error. This is an error-correcting court, not a fact-finding court. But the government's own recitation of the facts, based on Appellate AUSA's testimony in the brief, is that the Trial AUSA was aware of judicial estoppel because the Trial AUSA protested to the law clerk that judicial estoppel did not apply. The only place judicial estoppel appears is in that memorandum order that's dated 422. And that actually gets us to my concerns about Mr. Kokas's initial comments. I don't disagree with there was a change in docketing here. This isn't something that just happened. This has been on the dockets a really long time. I noticed it when I briefed this case. So it wasn't some nefarious action. It doesn't appear to be anyway. The order of court that everybody's talking about here today was dated and signed March 22nd, the date of sentencing. Nobody is disputing that fact. Nobody is suggesting that the words of that order changed. Everything is exactly the same. It's just now that order is linked to the same day as the sentencing hearing. But the order is exactly the same. No text change. There's no suggestion that the government had access to this order. It's not a suggestion. The court says, did you review my order? And nobody says, no, I didn't review your order, Your Honor. Now, if something happens on the record, let's put it in different terms. Say there's a charge conference before trial that occurs in chambers. The obligation is on defense counsel to come back onto the record and say, I object to something that happened in chambers. I articulate an objection to jury instruction X. This is what I think it should say. We understand the court denied, but we want to put it on the record. That is the complaining party's obligation. Flores-Mejia makes that very clear. If you have an objection to some process, and here the government's suggestion is the bad process was providing the parties with this order off the record before the hearing started, your obligation is to object when you're aware of that process. The judge came on the bench. He said, you're aware of my ruling. I understand you've reviewed it. Not even you had the opportunity to review it. He said, I understand you've reviewed it. The obligation is on the parties to say, I didn't review it, or, hey, judge, we didn't quite understand it. I mean, if the shoe were on the other foot, the government would be arguing defense counsel with sandbagging trial counsel, or I'm sorry, the trial court, by not advising them of the problem that they had with this process. The order was docketed. Everybody knew the ruling before they came out on the bench. The opinion was then showed to the parties. They had an opportunity to review it, and they, in fact, admit that they do review it to now say that they didn't have any idea what was in that order and so had no opportunity to object on the basis of judicial estoppel. It just smacks of unfairness. The government knows the rules, and they're totally happy to cite them to defense counsel. They should be held to the same standard that defense counsel is. I can turn quickly to the cost issue. I'm not sure how much time I have. Well, your time's been up for a few minutes. I apologize about that. Let me just, excuse me on the cost issue. I help out with reentry court here in the Eastern District. I can't tell you how many times I've seen costs like the defendant has to pay restitution and fines in the amount of, and these are actual figures, half a million dollars. Of course, there's no way he can do that. He just did 20 years in prison. He gets out, and so the probation office says, okay, well, you just paid $25 a month toward the cost of your outstanding fines and restitution. I never calculated how long that would take him. It would probably take him longer than we have left on this planet Earth because the sun's going to exhaust the supply of hydrogen before this guy finishes paying his fines. I just don't see an issue here. It seems to me that, especially if it's done so that he can get his insurance to pay for it, I'm not sure why that's a big deal unless we just argue for the sake of arguing. We could turn this into Monty Python's Bureau of Arguments. I mean, I'm happy to rest on the briefs, but I do want to respond quickly to that. The point is- Speaking only for myself, that would make me very happy. The question is, the statutes, 28 U.S.C. 994Y, the guideline 5E1.2D7, and 18 U.S.C. 3572A6 all suggest or say that a cost of supervision is, in fact, a component of a fine. So this is a legal question. Once the court says you are indigent, you don't have the ability to pay a fine, and you're not likely to be able to pay a fine. And he waives the fine. He can impose this type of fine. So that's the question. Well, Ms. Villarosa, it's according to- I'm sorry, Mr. Pitchford. According to Mr. Karkas, that's there so that when he goes to treatment, his insurance company can pay for it. And he gets better treatment than he would if it's left up to folks the government contracts with. Why are you arguing about that? Nobody is- See, the government has a bunch of contingencies that it puts out there. But the real question is not that, are they going to put him in jail because he doesn't pay? That's not the real question. The real question is, there's empirical evidence that supports our theory that imposing any kind of cost like this acts as a barrier to treatment. This man- Is any of that on the record? Yeah. This man needs- Is any of that on the record? Yes. Yes, your honor. Yes, I cited it in my briefing, your honor. And I believe that defense counsel likewise cited this. I mean, it's just best practices that someone like Mr. Gardner who comes back into the world, re-entry presents a million different triggers and best practices is that he starts getting treatment right away. So cost is a barrier to treatment. But the real problem, the reason I'm talking about this now is the government cites an entirely different statute to support what happened here. It's a statutory argument and they never grapple with the plain language of the statute, which I asked you to do. All the cases are- But I ask you about the point made by your friend on the other side. He explains a series of things that are going to happen, that there's not going to be enforcement until either private insurance. At most, the probation officer would propose revocation. He would ask what the ability to pay was. Why is this right now, as opposed to on a theoretical eventual revocation proceeding, which your friend on the other side represents, doesn't happen in the district based on ability to pay? Why should we confront this issue now? Since it's a practical matter, it sounds very unlikely to happen. And we'll have more facts when it does. None of those contingencies are on the record. None of how things sometimes happen are really on the record. That's all just in the government's brief. But the bigger point- Do you contest that? Are you contesting that what he said is accurate? I'm just saying, we have no idea how any individual probation officer is going to approach anything. I don't know how we can- What about how the judge will approach it? And I'm not suggesting a judge is going to throw someone in jail because they didn't pay. Again, then why are we arguing about this? We're arguing because it's a legal question about, does he have the authority to do this? The government points to a statute and says, all the case falls in its favor. And he asks you, the Third Circuit, to follow that case. Let's assume he didn't have the authority to do it. But by doing it, the defendant gets his insurance company to pay for the cost of treatment. Let's assume that's the state of affairs. Wouldn't that be a good thing? The idea that Mr. Gardner gets treatment is absolutely a good thing. And if he has insurance, that insurance pays for it is also a good thing. The question is, who should bear the burden at this moment? When we talk about rightness, this court has always found these kinds of things are right for decisions. Now on appeal- I don't usually do this, but we're getting nowhere here. We understand your argument. You're resting on the breeze on the cross appeal, and we thank you. Thank you. Mr. Glaskis, do you want to take just a couple of minutes on your cross appeal? Let me ask you this. She makes a very good point, it seems to me, on plain error. And we just had a case the other day when she's arguing that, look, when it's plain error and the defendant doesn't object, we're pretty strict about how we enforce the bucket factors. And absent prejudice, we don't send it back in reverse. She's saying, well, the same thing should apply to the government, which is an excellent point. There is the point you're making about prejudice insofar as the AUSA was there and the insinuation that he acted in bad faith. One way to get around that, if you were to win this, would simply be a very short NPO affirming, rejecting the cross appeal. But in doing the affirming, note that as a matter of law, we did not find that the conduct on this record amounts to unethical conduct or supports a finding of judicial estoppel. If that's done, down the road, if that AUSA has asked that question that I hypothesized earlier, he or she can say in good faith, no. It was never suggested by any court I was guilty of bad faith or unethical conduct. So I can show your honor that I think plain error does not apply. And even if it does, I can satisfy all four prongs for you. There's authority out of the 10 circuits. This is the Bureau of Arguments. There's an easy way to resolve this whole thing. But rather than do that, OK, go ahead. Go make the argument. Here's what it is. So there's authority that says when the district court sua sponte raises and resolves an issue of law on his merits, an appellate may challenge the ruling on appeal, even if he failed to object. And review is not for plain error, but under the same standard of appellate review, they'd be helpful if it's preserved. That's US versus Hernandez Rodriguez 352 F3rd 1325, I think, 10th Circuit 2003. And it cites three other public decisions from the 6th, 9th, and DC circuits. That's what happened here. I mean, we got sandbagged by this. Yes, the clerk did use the words judicial estoppel. So that's our attorney did know that was the basis of the ruling. So when the court said, you know, I understand counsel's reviewed the ruling. Our attorney didn't say, well, to be clear, we didn't get to read the actual paper. But what he did say was, well, I do want to state on the record our objection to the court's ruling. And then he goes into the other possibilities, just in case the clerk changes his mind or the judge changes his mind about how this works. Suppose that you apply plain error review. I think I've shown plain error on the application of judicial estoppel. Prejudice is not merely limited to the AUSA's reputation, because now I want to put us in the defendant's shoes as she is so capably done in her argument. In their defendant's shoes, when a court miscalculates a guideline range at step one of Gunter, that is going to be presumptively prejudicial unless we have some statement in the record that the district court would have announced the same sentence without the miscalculation. That's what's good for the goose ought to be good for the gander here. And that's what happened. The court substantially miscalculated the guideline range. And that's prejudicial in and of itself, apart from the reputational prejudice. As far as the discretionary prong, I mean, look, I will show you what happened on this docket, but I would in no uncertain terms tell you the question of the integrity of that court, the fairness of that court is out the window. If you look at those documents and you draw reasonable inferences from them, which is somebody went back and changed it to say, to suggest that we had this on the docket served to us. It even says at the bottom, by email on that date, that didn't happen. And the rest of it, I'm not having a go at the law clerk. I clerk myself on the court, this court too. But the fact is he's doing whatever the judge allows him to do or is instructing him to do. And it's improper in this case. It was improper in the Pacina case. This court just heard an argument on June 18th, same clerk, same judge where the defendant, Ms. Petropalo's office raised an issue or argued an issue about the clerks doing a similar thing, ventilating substantive stuff at a 75 minute status conference off the record, no judge present and then an order's promised, but it never issues. That was United States versus Michael Heinrich, H-E-I-N-R-I-C-H. And Judge Smith is presiding. And that panel view, that is serious enough to ask the parties to brief separately the proper role of a law clerk. So I think if there were ever a case where prong four is met, it's here. And this just wasn't fair to the AUSA. And candidly, I don't care if he gets the same sentence or not, the AUSA might, but you have to do it the right way, the way this court has said you must through Gunter. We understand your argument. You'll submit the 28J letter to kind of lay out for us what you said about the docket. And then there also, I mentioned US versus Michael Heinrich. Guess what? I don't forget it, even though I made a note of it. I will yet. Go ahead, Mr. Beavis. I will yet. I'm sorry. Judge Beavis, you said something? Well, I just, at the same time, I thought a transcript would help. Yeah, I think it would help. Get a transcript and talk with Mr. Keene about that when we recess before the next case, he'll explain that to you. And lastly, the government paid for that since Mr. Godrej has to say a lot of his money to pay for possibly, to pay for the cost. Okay, the 28J might be a few words over the 350. I don't know if I can do it in 350, but I'll do my best. Okay, as a judge one time, it was not me said, but I heard about it, said to somebody who said, Judge, I can't do that kind of time. That's too long for me. The judge's response was, give it your best shot. So I will. I was not that judge. Okay, thank you. Thank you very much. Why don't we take a brief recess for the next case? All right, thank you.